**TEXAS INSTRUMENTS INCORPORATED,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

**Court No. 78–10–01812.**

United States Court of International Trade.

July 28, 1981.

Frederick L. Ikenson, Washington, D.C., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, New York City, Commercial Litigation Branch, Saul Davis, New York City, for defendant.

ON PLAINTIFF'S MOTION FOR SUM-
MARY JUDGMENT AND DEFEND-
ANT'S CROSS–MOTION FOR SUM-
MARY JUDGMENT

NEWMAN, Judge:

The narrow and technical issue presented by this action affects one of the Government's most important international trade programs—the Generalized System of Preferences ("GSP"), 19 U.S.C. § 2461, *et seq.* See also General Headnote 3(c), Tariff Schedules of the United States ("TSUS"). We are called upon in this case to determine whether plaintiff's importation was entitled to duty-free entry under the GSP statute.

Plaintiff imported from Taiwan certain electronic components for cameras called "cue modules", which were entered at the port of Honolulu, Hawaii in May 1977. The District Director of Customs at Honolulu classified the merchandise as "other" parts of photographic cameras under item 722.34, TSUS, as modified by T.D. 68–9, and assessed duty at the rate of 10 percentum ad valorem. Plaintiff admits that the imported merchandise is properly classifiable as other parts of photographic cameras, as found by the District Director, but claims that the merchandise should have been classified under item A722.34, TSUS, and granted duty-free treatment under the GSP statute and General Headnote 3(c), TSUS.

Plaintiff has moved for summary judgment, and defendant has cross-moved for summary judgment. For the reasons stated hereinafter, plaintiff's motion is denied, and defendant's cross-motion is granted.

I.

The pertinent facts are:

Each of the imported cue modules consists of a flexible circuit board to which have been assembled in Taiwan three integrated circuits ("ICs"), a photodiode, a capacitor, a resistor, and a jumper wire. The cost or value of the three ICs and photodiode in each cue module is not less than 35 percent of the appraised value of each cue module at the time of its entry into the United States.

Certain items were imported into Taiwan where they were then assembled into the ICs and photodiodes. These items consisted of silicon slices containing a multitude of fabricated electronic chips, lead frame

strips, mold compound, gold wire on spools and chip mounting material, either epoxy or gold preforms. The chips were separated by a "scribe and break" operation. Subsequently, each chip was mounted (and by use of epoxy or gold preform made to adhere conductively) to a section of a lead frame strip. Pieces of gold wire were used to provide an electrical connection from various areas on the chip to various areas on each lead frame strip section. Plastic mold compound was then liquified and molded under pressure over each section of lead frame strip containing a bonded and connected chip (or, in one instance, two bonded and connected chips). After the mold compound hardened into a protective covering, the lead frame strips were trimmed and severed into a multitude of individual devices. The devices, at this stage, were finished ICs and photodiodes.

Each cue module was produced in Taiwan by assembling three ICs and one photodiode (themselves produced in Taiwan, as described above) together with one resistor, one capacitor, and a jumper wire to a flexible circuit board.

## II.

General Headnote 3(c), TSUS, reads, so far as relevant:

Whenever an eligible article is imported into the customs territory of the United States directly from a country or territory listed in subdivision (c)(i) of this headnote, it shall receive duty-free treatment, unless excluded from such treatment by subdivision (c)(iii) of this headnote, provided that, in accordance with regulations promulgated by the Secretary of the Treasury:

(A) the sum of (1) the cost or value of the materials produced in the beneficiary developing country plus (2) the direct costs of processing operations performed in such country is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States;

See also 19 U.S.C. § 2463(b).

The applicable GSP regulations are:

Section 10.176(a), Customs Regulations [19 CFR § 10.176(a)]:

(a) *Merchandise produced in one beneficiary developing country.* Merchandise which is the growth, product, manufacture, or assembly of a beneficiary developing country and which is imported directly from such beneficiary developing country may qualify for duty-free entry under the Generalized System of Preferences only if the sum of the cost or value of the materials produced in the beneficiary developing country, plus the direct costs of processing operations performed in such country, is not less than 35 percent of the value of the article as appraised in accordance with section 402 or 402a, Tariff Act of 1930, as amended (19 U.S.C. 1401a, 1402). For purposes of this paragraph, the term 'country' does not include an association of countries which is treated as one country under § 10.-171(b), but does include a country which is a member of any such association.

Section 10.177(a), Customs Regulations [19 CFR § 10.177(a)]:

(a) *'Produced in the beneficiary developing country' defined.* For purposes of §§ 10.171 through 10.178, the words produced in the beneficiary developing 'country' refer to the constituent materials of which the eligible article is composed which are either:

(1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

(2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

Plaintiff argues that the assembly of the silicon slices, lead frame, gold wire, etc. (which were imported into Taiwan) into the ICs and photodiodes constituted the substantial transformation of constituent materials into new articles of commerce within the purview of 19 CFR § 10.177(a)(2). Defendant contends that the cost of the ICs and photodiodes contained in each cue module does not qualify for inclusion in the

statutory 35 percent standard, for the reasons that: (1) the items imported into Taiwan were "United States fabricated components" or "articles" rather than "materials" prior to shipment to Taiwan; (2) in any event, the assembly of the components in Taiwan into the cue modules did not "substantially transform" them into new articles of commerce.

Defendant's position in the present case is succinctly stated in 10 Cust.Bull. 176, 178, T.D. 76–100 (1976):

[When articles are] produced by the joining and fitting together of components [,they] are not considered substantially transformed constituent materials. Articles of this kind may well have been substantially transformed, but they are not produced from substantially transformed constituent materials. *Under this criterion, partially completed components which are completed and assembled in the beneficiary developing country into finished articles or components do not qualify as substantially transformed constituent materials. By the same token, most assembly operations and operations incidental to assembly will not qualify.* For example, various electronic components and a bare but otherwise finished circuit board are imported into a beneficiary developing country and there assembled by soldering into an assembled circuit board for a computer. Although substantially transformed, the fabricated unit is not a substantially transformed constituent material of the computer, the exported eligible article produced in the beneficiary developing country. [Emphasis supplied.]

### III.

The imported cue modules were classified under item 807.00, TSUS, and assessed with duty on the basis of the appraised value less the United States cost of the fabricated components of United States origin. The gravamen of plaintiff's claim is that the cost or value of the "materials" imported into Taiwan should be included in the Taiwanese value added costs for purposes of

duty-free treatment under the GSP statute and regulations. It is defendant's contention that the GSP statute and the pertinent Customs Regulations preclude the utilization of United States (or any non-Taiwanese) fabricated components that were assembled to form a completed part or article in determining whether the 35 percent value added requirement was fulfilled, since fabricated components are not "constituent materials". In essence, defendant urges that products which are "fabricated components" for the purposes of item 807.00 are not "materials" for purposes of the GSP.

I agree with defendant's argument. The GSP statute limits duty-free entry to those "eligible articles" of a BDC which:

(1) were directly imported from the BDC to the United States, and

(2) possessed *"materials"* produced in the BDC that amounted to, together with the direct cost of processing performed in the BDC, at least 35% of the appraised value of the "article."

The use of the term "article" to refer to imported merchandise, and use of the term "material" to refer to the value added requirement for the "eligible article" in the BDC, clearly demonstrate a Congressional intent to differentiate between "articles" on the one hand and "materials" on the other hand. In essence, then, the statute and regulations provide bifurcated requirements for GSP treatment relative to the origin of the imported merchandise.

As a threshold requirement, the imported "article" must, of course, be produced in the BDC. However, the imported "eligible article" must not only be a product of the BDC, but it must also possess a "cost or value of *materials* produced in the BDC" and/or "direct cost in processing" that is at least 35 percent of the appraised value of the "eligible article".

19 CFR § 10.177(a) limits the inclusion in the value added portion of the eligible article to material which was the growth, product, or manufacture of the BDC, or to material which had been substantially transformed in the BDC into a new and different article of commerce. Hence, while the as-

sembly of fabricated components, rather than materials, may be relevant in determining whether the "eligible article" was a product of the BDC, assembly of fabricated components is not relevant respecting the 35 percent value added requirement.

 The short of the matter is: the GSP statute and pertinent regulations preclude the inclusion of fabricated components produced outside the BDC and assembled in the BDC in the "cost or value of the materials produced in the beneficiary developing country" to determine the 35 percent value added requirement. Consequently, the value of the ICs and photodiodes cannot be included in the figures for the "cost of materials" and "direct costs of processing" to determine whether these figures are not less than 35 percent of the appraised value of the cue modules.

For the foregoing reasons, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted; and it is ordered that this action be and hereby is dismissed.